IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAKISHA WILSON et al.,          :     CIVIL ACTION
                                :     NO. 06-1566
          Plaintiffs,           :
                                :
     v.                         :
                                :
BLOCKBUSTER, INC.,              :
                                :
          Defendant.            :
                                :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        AUGUST 12, 2008

          Plaintiffs Lakisha Wilson, Omar Marshall, and Abashai
Woodard, all former employees of Blockbuster, Inc.
("Blockbuster"), brought this lawsuit alleging that Blockbuster
discriminated against them on the basis of race, in violation of
Title VII and 42 U.S.C. § 1981.  Plaintiffs allege a pattern of
discriminatory conduct by Blockbuster that affected not only
themselves, but also the eight plaintiffs in <u>Coleman v.
Blockbuster</u>, No. 05-4506, another case before this Court.
<u>Coleman</u> was filed a year earlier than this case, but the two
cases are related in a number of ways.  The plaintiffs worked at
Blockbuster during the same time period, are represented by the
same attorneys, and many, although not all, of the plaintiffs
worked for the same supervisor while employed at Blockbuster.

          Because of the similarities between the cases and for

-1-

reasons of economy, discovery in <u>Coleman</u> and <u>Wilson</u> was conducted in tandem.  <u>See</u> Order, July 25, 2007 (doc. no. 45) (staying summary judgment proceedings in <u>Wilson</u> until the conclusion of discovery in <u>Coleman</u>).  Once discovery in <u>Coleman</u> concluded, consolidation was no longer warranted and the Court dealt with each plaintiff's case individually.  <u>Coleman</u> is to be severed into eight separate cases and judgment will be entered in each individually.[1]

Similarly, in this case, the Court will deal with each plaintiff's claims separately.[2]  All the plaintiffs concede that their claims under Title VII must be dismissed for failure to exhaust administrative remedies.  Moreover, as to plaintiffs'

---

[1]    Because the parties in <u>Coleman</u> are in the midst of settlement negotiations, the Court stayed entry of final judgment in that case for sixty days.

[2]    Although plaintiffs joined their claims in a single complaint, each individual plaintiff's case must be considered separately.  Plaintiffs have failed to show that their claims stem from a single policy or practice of discrimination. Although plaintiffs make numerous references to Blockbuster's "African-American" stores, they have failed to show that Blockbuster had any racially discriminatory policies regarding employment and staffing decisions.  Blockbuster admits that it did have a marketing program that tailored advertising and movie offerings to the demographics of customers near Blockbuster stores.  However, plaintiffs have failed to show any link between this marketing program and Blockbuster employment practices, much less the individual adverse employment actions complained of by plaintiffs.
    The terminations and other adverse actions complained of by plaintiffs are separate events, involving different factual and legal questions.  Therefore, each claim will be analyzed individually.

remaining claims, Blockbuster's motion for summary judgment will be granted.  There are no genuine issues of material facts and Blockbuster is entitled to judgment as a matter of law.[3]  Because the Court will grant Blockbuster's motion for summary judgment as to each plaintiff, after the plaintiffs' cases are severed, judgment shall be entered in each case in favor of Blockbuster and against the plaintiff.


I.   BACKGROUND

   A.   Store Management

        Defendant Blockbuster, Inc. is a video-rental company with stores throughout the Philadelphia area.  Blockbuster's stores are organized into districts, each of which is overseen by a district leader ("DL").  Urbanek Decl. ¶¶ 3-4 (doc. no. 37). Each DL is responsible for overseeing the overall financial performance of the stores in his or her district.  Id. ¶ 4.  Each store is managed by a store manager ("SM") who reports directly to the DL.  Id. ¶ 5.  Each store also has an assistant store manager ("ASM"), who reports to the store manager, and either a second ASM or a shift leader ("SL"), who also reports to the store manager.  Id.  Finally, most stores' staffs also include

_____

    [3]    Because the Court will grant Blockbuster's motion for summary judgment, it need not reach defendant's alternative argument that plaintiffs' claims should be dismissed as a sanction for noncompliance with the Court's discovery orders.

several customer service representatives ("CSRs"); these employees generally work part-time and they do not have management responsibilities.  Id. ¶ 6.

Store managers are responsible for conducting full retail inventories to ensure the security of Blockbuster property.  Id. ¶ 8.  Inventories are conducted pursuant to an inventory schedule circulated to SMs.  Id.  Furthermore, SMs are responsible for ensuring that all alarms are activated before the store is closed.  Id. ¶ 9.

B.   Employee Training

Blockbuster trains its employees differently for different positions.  CSRs are trained to work in public areas of the store and their training focuses on customer service.  Id. ¶ 10.  ASM trainees receive eight weeks of training that includes an increased focus on "back office" tasks involving paperwork and Blockbuster management processes.  Id. ¶¶ 9-10.  SM trainees receive twelve weeks of training.  Id. ¶ 8.  All SM trainees must complete the training program, which includes making a successful oral presentation before a panel, before they are promoted from trainee to manager.  Id. ¶ 8.

Before an employee can be promoted from one position to another, the employee must complete the "Star Maker" workbooks, a set of training materials created by Blockbuster, for the

-4-

position being sought.

      C.    <u>Employee Discipline Policy</u>

          Blockbuster maintains a progressive discipline policy, referred to by the company as the Progressive Corrective Action Policy, that governs Blockbuster's responses to employee misconduct. Employee Handbook 17, Ex. C, Def.'s Mot. Summ. J. The policy provides for a progressively stronger reaction to violations of Blockbuster's employment policies: first, a verbal warning; second, a written warning; third, a final warning; and fourth, termination of employment. <u>Id.</u> However, under certain circumstances discipline might be accelerated, even to the extent that certain violations could lead to immediate termination. <u>Id.</u>

          The Blockbuster Employee Handbook groups violations of Blockbuster policy into three classes: A (most serious); B (serious); and C (less serious). <u>Id.</u> According to the Handbook, Class A violations "may be grounds for immediate termination." <u>Id.</u> at 18. Class A violations listed in the Handbook include "[g]ross negligence that endangers people or property." Failing to conduct a retail inventory on schedule is considered gross negligence that endangers company property. Urbanek Decl. ¶ 8. Failing to activate a store security alarm also constitutes a Class A violation of company policy. Employee Handbook 18.

          "After the first occurrence of a [Class B] violation,

the employee may receive a written warning and be advised that a recurrence may be grounds for termination." Employee Handbook 21.  A Class C violation provides grounds for a verbal warning, which may be documented and placed in the employee's personnel file.  Id. at 22.


II.  TITLE VII CLAIMS

None of the three plaintiffs in this case has exhausted his or her administrative remedies.[4]  Pls.' Mem. Opp. Summ. J. 27 (doc. no. 56-2).  Therefore, the Title VII claims of the plaintiffs will be dismissed.


III. MOTION FOR SUMMARY JUDGMENT

Blockbuster moves for summary judgment on plaintiffs' remaining claims of discrimination under 42 U.S.C. § 1981.  Each plaintiff's case is analyzed individually below.


A.    Summary Judgment Standard

Summary judgment is proper when "the pleadings, the

---

[4]    Plaintiffs concede that, under the reasoning of Coleman v. Blockbuster, 2008 WL 2622912 (E.D. Pa. June 30, 2008), a companion case to this case, their Title VII claims must be dismissed for failure to exhaust administrative remedies.  See Pls.' Mem. Opp. Summ. J. 27 (citing Coleman v. Blockbuster). Accordingly, plaintiffs note that their memorandum opposing defendant's motion for summary judgment contains only argument regarding their Section 1981 claims, not their Title VII claims.

discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof."  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out

specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

B.   Disparate Treatment[5]

The plaintiffs claim that Blockbuster subjected them to unlawful disparate treatment.  Each plaintiff asserts that he or she was subjected to an adverse employment action, either a denial of promotion or termination, on the basis of race.

Claims of disparate treatment that are not supported by direct evidence are subject to the burden-shifting analysis set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).[6]  Under this analysis, although the burden of production

---

[5]     Plaintiffs' brief makes reference at various points to the disparate impact of Blockbuster policies and to the hostile work environment at Blockbuster.  However, plaintiffs' complaint did not assert claims under either a disparate impact or hostile work environment theory; rather, the complaint focused squarely on the disparate treatment allegedly suffered by each plaintiff during his or her employment.  Moreover, the argument section of plaintiffs' brief similarly asserts only a disparate treatment theory.  Plaintiffs do not identify any specific Blockbuster policy that, although facially race neutral, had a disparate impact on African-American employees, nor do they argue that the various incidents of discrimination alleged add up to a hostile work environment.  Rather, they focus on examples of hostility to show that any legitimate reason offered by Blockbuster for plaintiffs' termination is a pretext.  See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996) (holding that evidence of a hostile work environment may support claim that a proffered reason for termination is pretextual).

[6]     In analyzing plaintiffs' claims, the Court relies on cases involving claims under either Section 1981 or Title VII because "the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim."

shifts between plaintiff and defendant, the burden of persuasion remains on plaintiff the entire time.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799 n.10 (3d Cir. 2003); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1065 (3d Cir. 1996).

First, a plaintiff must establish a prima facie case of discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas, 411 U.S. at 802.  In other words, a plaintiff must show 1) that he or she belongs to a racial minority; 2) that he or she was qualified for the position in question; 3) that he or she was discharged; and 4) that he or she was terminated under circumstances that give rise to an inference of unlawful discrimination.  Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 2005) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The "central focus" of the prima facie case "is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin."  Sarullo, 352 F.3d at 798.  Although plaintiff need not show a "precise kind of disparate treatment" by comparing him or herself to a similarly situated individual from outside plaintiff's protected class, plaintiff "must establish some causal nexus between his membership in a protected class" and the

---

Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999).

adverse employment decision complained of.  Id.  A plaintiff's subjective belief that race played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination.  Jones v. City of Philadelphia, 214 F.3d 402, 407 (3d Cir. 2000).

Establishing a prima facie case will create the presumption of unlawful discrimination.  St. Mary's, 509 U.S. at 506.  "The burden [then] shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection."  Id. (internal quotations omitted).  The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes, 32 F.3d at 763.  Finally, "if defendant meets its burden, plaintiff must be given the opportunity to prove by a preponderance of the evidence that the legitimate reasons proffered by defendant were not its true reasons, but rather, a pretext for discrimination."  Id.

"The plaintiff may show pretext directly by persuading the court that a discriminatory reason more likely motivated the employer."  Id.  "The employee can also show pretext indirectly by demonstrating that the defendant's proffered explanation is unworthy of credence."  Id.  However, "[p]laintiff cannot prevail under Title VII merely by establishing that the employer made a

decision that was wrong or mistaken." <u>Bray v. Marriott Hotels</u>, 110 F.3d 986, 990 (3d Cir. 1997). Moreover, a finding that the reason offered by defendant is pretextual "permits," but does not "compel," a finding of unlawful discrimination. <u>Sheridan</u>, 100 F.3d at 1066.

C.   <u>Analysis of Individal Claims</u>

1.   <u>Lakisha Wilson</u>

Wilson alleges that she was denied a promotion by Blockbuster for discriminatory reasons and that, eventually, her employment was terminated by Blockbuster because of her race. Cmplt. ¶ 9. Blockbuster's motion for summary judgment will be granted because Wilson has failed to establish a prima facie case of discriminatory promotion or termination.

a.   <u>Facts</u>

Lakisha Wilson was hired as a CSR at the Wyncote store on March 21, 2000. Ex. H, Def.'s Mot. Summ. J.; Wilson Dep. 63:20-21. In March 2001, Wilson transferred from the Wyncote store to the Chestnut Hill store. <u>Id.</u> at 63:22-24. She worked at the Chestnut Hill store from March 2001 until April 2004 when she resigned her position at Blockbuster. <u>Id.</u> at 63:22-24, 194:1-4.

Wilson testified that, in early 2002 while working at

-11-

Chestnut Hill, she submitted an application for an SM or ASM position to Abashai Woodard, who was then the store manager of the Chestnut Hill store. <u>Id.</u> at 144:3-16, 146:10-11. She also testified that, on the day after she submitted her application, Woodard informed her that Woodard had given the application to Cari Ann Urbanek. <u>Id.</u> at 144:24-145:4. In 2002, Urbanek was a district leader at Blockbuster; however, her district did not include the Chestnut Hill store.[7] Urbanek Decl. ¶ 10. Therefore, Urbanek did not have the authority to promote employees of the Chestnut Hill store. <u>Id.</u>

Rasheedah Garner testified, in an affidavit, that she was told by Urbanek to reduce Wilson's hours. Garner Aff. ¶ 8. The affidavit does not specify when Garner received these instructions or whether she carried them out. <u>See</u> Garner Aff.

Blockbuster's payroll records reveal that, in the

---

[7] It appears that, at some point after Wilson submitted her application for a promotion, Urbanek's district was changed to include the Chestnut Hill store. Rasheedah Garner, who managed the Chestnut Hill store in 2003 and 2004, submitted an affidavit stating that, as manager, she reported to Urbanek, the district leader. Garner Aff., Ex. 1, Pls.' Opp. Summ. J. ¶ 2-4. Garner further states that decisions regarding promotions were made by Urbanek. <u>Id.</u> ¶ 4. Plaintiffs rely on Garner's affidavit to contest Urbanek's claim that she lacked the authority to promote Wilson. Pls.' Opp. Summ. J. 3. However, Urbanek's declaration only states that she did not have the authority to promote Wilson at the time that Wilson applied for a promotion. Urbanek Decl. ¶ 10. Garner's affidavit, indicating that Urbanek had the authority to promote Wilson during 2003 and 2004, does not undermine Urbanek's claim that she did not have the authority to do so during 2002.

months before her resignation, Wilson's hours at Blockbuster decreased slightly.  For example, for the work weeks ending on January 25 and February 1, 2004, Wilson was paid for 50.01 regular work hours and 8.00 vacation hours.  Ex. I, Def.'s Mot. Summ. J; Ex. C, Def.'s Reply Mem.  In the weeks ending on April 18 and April 25, 2004, which immediately preceded Wilson's resignation, she was paid for 42.66 regular work hours.  Ex. I, Def.'s Mot. Summ. J.  Wilson testified at her deposition that she truthfully reported her hours to Blockbuster and that she has no reason to believe that Blockbuster's payroll records are incorrect.  Wilson Dep. 76: 2-19.

Wilson resigned from Blockbuster in April 2004.  Id. at 63:22-24, 194:1-4.

b.   Discriminatory termination

Summary judgment will be granted as to Wilson's claim of discriminatory termination.  First, contrary to the allegation in the Complaint, Wilson was not terminated by Blockbuster; she resigned.[8]  Second, even assuming that Wilson had pled

---

[8]   Plaintiffs' memorandum of law never uses the term "constructive discharge" in its discussion of Wilson's claims. See Pls.' Mem. Opp. Summ. J. 35-36.  Moreover, the complaint unequivocally states that "the Defendant terminated Plaintiff [Wilson's] employment." Cmplt. ¶ 9.  This allegation notwithstanding, the Court assumes that plaintiff is pursuing a constructive discharge claim since her testimony is that she resigned her employment, not that she was fired by Blockbuster.

-13-

constructive discharge, which she did not, she has failed to
point to evidence of a constructive discharge.

> Constructive discharge occurs when an employer
> knowingly permit[s] conditions of discrimination
> in employment so intolerable that a reasonable
> person subject to them would resign.  A hostile
> work environment will not always support a
> finding of constructive discharge.  To prove
> constructive discharge, the plaintiff must
> demonstrate a greater severity or pervasiveness
> of harassment than the minimum required to prove
> a hostile working environment.

Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 n.4 (3d Cir.
2006).

Wilson has failed to show that Blockbuster "knowingly
permit[ted] conditions of discrimination in employment so
intolerable that a reasonable person subject to them would
resign." See Spencer, 469 F.3d at 317 n.4.  Although Wilson's
memorandum does not discuss constructive discharge as such, it
does refer to facts relevant to a constructive discharge claim.

First, Wilson alleges that a white employee named Steve
Miller at the Chestnut Hill store made racist comments in
Wilson's presence.  For example, Wilson testified that Miller
commented on the appearance of African-American employees and
customers, and made jokes comparing African-Americans to monkeys.
Wilson Dep. 106-116.  While such comments are certainly
offensive, Wilson has not pointed to any evidence that
Blockbuster "knowingly permit[ted]" Miller's behavior.  She has
not shown that the comments were made in the presence of

-14-

Blockbuster managers or that she complained to any one at Blockbuster.  In fact, she specifically testified that she did not call Blockbuster's employee complaint hotline or complain about Miller in any other way.  Id. at 116-17.

Second, Wilson alleges that Urbanek instructed SM Garner to reduce Wilson's hours.  However, Wilson again has failed to show that Blockbuster "knowingly permitted conditions of discrimination in employment" that would render the employment intolerable.  First, there is no evidence that Garner actually obeyed Urbanek's instructions.  Although Wilson initially claimed that she was working only five hours a week before she resigned, she rescinded that testimony when she reviewed Blockbuster payroll records.  The records show that her weekly hours and compensation fluctuated somewhat from week to week, but generally remained in the same range, about forty to fifty hours per two-week pay period, throughout her employment at Blockbuster.

Moreover, even if Wilson's hours had been reduced, there is no evidence that Urbanek's decision to reduce Wilson's hours was a "condition of discrimination."  Wilson has not shown that her hours were reduced to provide more hours to a white employee.  Instead, her testimony was that Garner, the store manager and an African-American, benefitted from the reduction in

Wilson's hours.[9]

Wilson has failed to point to evidence that Blockbuster "knowingly permit[ted] conditions of discrimination in employment so intolerable that a reasonable person subject to them would [have] resign[ed]."  See Spencer, 469 F.3d at 317 n.4.  Therefore, Blockbuster's motion for summary judgment will be granted as to Wilson's claim of discriminatory termination and constructive discharge.

    c.  Promotion claim

        Summary judgment will also be granted as to Wilson's discriminatory promotion claim because Wilson has failed to establish a prima facie case under McDonnell Douglas.

        Wilson has established the first prong of the four-part prima facie case: she is a member of a protected class.  For purposes of this motion, the Court will assume that Wilson established the second prong of the test by showing that she was

---

        [9]   Wilson's memorandum also points to Wilson's testimony that a white employee named Christina Trunk was once offered overtime hours when Wilson was not.  Wilson testified that Trunk told Wilson that Urbanek telephoned Trunk and asked her to work extra hours.  Wilson's testimony about Trunk's statement is hearsay and plaintiff has not identified any hearsay exception under which the testimony is admissible.  Because Wilson's testimony about the offer of overtime to Trunk is inadmiisible hearsay, it cannot be considered for the purposes of summary judgment.  Philbin v. Trans Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996).

qualified for a promotion.  Wilson testified that she submitted
an application to SM Garner, asking to be trained for and
promoted to a new position.  As to the third prong, Wilson has
shown that she suffered an adverse employment action: she did not
receive a promotion.

However, Wilson has not established the fourth prong of
the prima facie case.  Wilson has not shown that she was denied a
promotion under circumstances giving rise to an inference of
discrimination.  Wilson has not shown that a white employee
received a promotion instead of her.  To the contrary, African-
Americans were promoted to management positions at the Chestnut
Hill store during Wilson's tenure.  When Wilson began working at
the Chestnut Hill store, Abashai Woodard, another plaintiff in
this case, was the manager.  When Woodard left that position,
Garner, another African-American, was promoted.  Rasheedah
Garner's affidavit states that "Urbanek told [Garner] that she
did not want to promote Ms. Wilson" but it does not link that
decision to Wilson's race.[10]

_____

[10]   Garner's affidavit does claim that "[w]hite employees
such as Christina Trunk were completely protected" from
reductions in their hours.  However, as already discussed,
Wilson's hours were not reduced.  Moreover, there is no evidence
that Trunk, or another white employee, received a promotion
instead of Wilson.  Furthermore, Garner's affidavit states that
Urbanek "repeatedly shouted" at Garner and other African-American
employees, but never shouted at Trunk or white employees.
However, the affidavit does not allege that Urbanek shouted at
Wilson, nor does it provide any information about the
circumstances of these alleged incidents.  Wilson cannot rely on

-17-

Because Wilson has not pointed to a white comparator who received more favorable treatment, or to other circumstances giving rise to an inference of discrimination regarding her lack of promotion, summary judgment will be granted as to her claim of discriminatory promotion.

2.   <u>Omar Marshall</u>

Omar Marshall asserts claims for discriminatory promotion and constructive discharge.  Because he fails to establish a prima facie case of either claim, Blockbuster's motion for summary judgment will be granted on both claims.

a.   <u>Facts</u>

Omar Marshall was hired as a CSR at the Vine Street store on August 29, 2002.  Ex. K, Def.'s Mot. Summ. J.  Marshall was promoted to an SL position on December 19, 2002.  Ex. L, Def.'s Mot. Summ. J.  On April 23, 2003, Marshall transferred from the Vine Street store to the Grays Ferry store.  Ex. M, Def.'s Mot. Summ. J.; Marshall Dep. 49.

On November 10, 2003, Greg Zielenski, a Caucasian employee, was hired as ASM of the Grays Ferry Store.  Ex. P, Def.'s Mot. Summ. J.  On January 19, 2004, Blockbuster hired Tyra

---

such vague allegations of incivility; she must point to evidence of a causal link between her failure to receive a promotion and her race.

-18-

Coleman as the SM of the Grays Ferry store.  Ex. N, Def.'s Mot. Summ. J.

About a week after Coleman arrived at Grays Ferry, Marshall asked for, and received, the Star Maker books for assistant manager training.  Marshall Dep. 162:6-9.  He completed the workbooks and left them on Coleman's desk.  <u>Id.</u> at 162:12-13. Marshall testified that Coleman gave the books to Urbanek.

Marshall was not promoted from shift leader to assistant store manager.  According to him, "Cari Ann [Urbanek] specifically told [him] that [he] was unqualified for the job." <u>Id.</u> at 71:3-4.  When Coleman asked Urbanek why Marshall was not promoted, Urbanek said that "he had an urban look."  Coleman Aff. ¶¶ 6-7.  Urbanek said she thought he "need[ed] to work on qualifications and [his] look and such."  Marshall Dep. 127:19-20.

Marshall resigned from Blockbuster on May 30, 2004. Marshall Dep. 43; Ex. O, Def.'s Mot. Summ. J.


b.  <u>Promotion Claim</u>

It is undisputed that Marshall is a member of a protected class and therefore satisfies the first prong of the <u>McDonnel Douglas</u> prima facie case.  It is also undisputed that Marshall experienced an adverse employment action, in that he was not promoted, thereby satisfying the third prong of the prima

facie case.  Blockbuster argues that Marshall has failed to satisfy the remaining prongs of the test: the second, that he was qualified for the position being sought; and the fourth, that he was denied a promotion under circumstances giving rise to an inference of discrimination.

The Court concludes that Marshall has pointed to sufficient evidence of his qualification to meet the "minimal requirements" of the prima facie case.  See St. Mary's, 509 U.S. at 506.  Marshall completed the Star Maker workbooks for an assistant manager position and delivered them to Coleman, the store manager.  Coleman believed that Marshall was "an excellent employee" and "management-qualified."  Coleman Aff. ¶ 5.  She testified, via affidavit, that he was "creative, smart," and had "better inter-personal skills" than other employees.  Id.

Marshall has not established a prima facie case of discrimination, however, because he has not pointed to evidence sufficient to establish the fourth prong--that he was denied a promotion under circumstances giving rise to an inference of discrimination.  Marshall identifies two pieces of evidence as giving rise to an inference of discrimination: first, Urbanek's statement to Coleman that Marshall could not be promoted because he had an "urban look," and second, the promotion of Greg Zielenski, a Caucasian employee to the position of assistant store manager.

Urbanek's statement to Coleman does not, under the circumstances of this case, give rise to an inference of discrimination.  There is no evidence that Urbanek's remark referred to Marshall's race rather than some other aspect of his appearance.  Marshall testified that Urbanek wanted him to "work on" his qualifications and his "look."  This testimony refutes Marshall's claim that "look" was being used as a euphemism for race.  While one could certainly change his look in terms of his hairstyle or manner of dress, one's race is not something that can be changed or "work[ed] on."

Furthermore, it is undisputed that Urbanek hired and promoted African-American employees, a fact that undermines Marshall's contention that Urbanek refused to promote him because of his race.  Coleman herself, the manager supervising Marshall, was hired by Urbanek and is African-American.  Ex. N, Def.'s Mot. Summ. J. (Coleman's hiring document, signed by Urbanek).

As to Marshall's second argument, the promotion of Greg Zielenski does not give rise to an inference of discrimination because Zielenski and Marshall are not similarly situated. Zielenski was hired as an assistant manager several months before Marshall ever applied for a promotion.  There is no sign that an assistant manager position was available at the later time when Marshall applied.  Zielenski is therefore not an appropriate comparator for purposes of the prima facie analysis.

Even assuming that Marshall has established a prima facie case by pointing to Zielenski as a comparator, Blockbuster's motion for summary judgment would still be granted. Blockbuster has met its burden of production by stating a legitimate, non-discriminatory reason for denying Marshall a promotion: Urbanek's belief that Marshall was not ready to serve as store manager.

Because Blockbuster has identified a legitimate reason for its action, the burden shifts back to Marshall to show that Blockbuster's reason is merely pretext.  Marshall has failed to meet his burden.  Marshall and Coleman have both testified that Marshall was ready to serve as store manager.  At most, this evidence shows that Urbanek was mistaken in her decision to deny Marshall a promotion.  However, "[p]laintiff cannot prevail under Title VII merely by establishing that the employer made a decision that was wrong or mistaken." Bray v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997).  It is not the role of the Court to sit as a "super-personnel department" when reviewing an entity's business decisions; the Court asks only whether a decision is discriminatory.  Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995).  Without evidence that Urbanek's decision was discriminatory, not just mistaken, Marshall cannot establish the fourth prong of a prima facie case.

Because Marshall has failed to establish a prima facie

-22-

case of discriminatory promotion, Blockbuster's motion for summary judgment as to this claim will be granted.

### c.   Constructive discharge

Blockbuster's motion for summary judgment as to Marshall's claim of constructive discharge will be granted.  The heart of Marshall's claim was that he was forced to resign his employment at Blockbuster because of the discriminatory promotion policies he encountered there.  Because Marshall's claim for discriminatory promotion has been rejected, his claim for constructive discharge similarly must fail.

### 3.   Abashai Woodard

Abashai Woodard asserts a claim for discriminatory termination.  Woodard has failed to establish a prima facie case of discrimination.  Therefore, summary judgment will be granted on this claim.

### a.   Facts

Woodard was hired by Blockbuster on August 24, 1999 to serve as an ASM at the Wyncote store.  Ex. E, Def.'s Mot. Summ. J.  In 2001, she transferred to the Chestnut Hill store and continued working as an ASM.  Woodard Dep. 80-81, 99.  On June 25, 2001, DL Ray Pietak promoted Woodard to SM of the Chestnut

Hill store.  Ex. F, Def.'s Mot. Summ. J.

On April 28, 2003, Woodard received a written warning for failing to set the fire alarm when leaving the store. Woodard Dep. 238-39; Ex. G, Def.'s Mot. Summ. J.  On June 17, 2003, Woodard received a final warning for failing to perform a "game refresh" and to complete a candy inventory.  Ex. G, Def.'s Mot. Summ. J.

On June 27, 2003, DL Patricia Howell terminated Woodard.  Id.  The termination form signed by Howell states that Woodard failed to "complete a full retail inventory as instructed."  Id.

Woodard testified that, on a number of occasions preceding her termination, Howell discussed with her the possibility of her transferring from the Chestnut Hill store to a store in West or South Philadelphia.  Woodard Dep. 237:4-238:3. Woodard declined a transfer because she believed that the stores offered were in much worse condition than the Chestnut Hill store.  Id.  She also testified that she believes that, if she had agreed to a transfer, she would not have been terminated. Id. at 236:9-11.

b.  Termination claim

Summary judgment will be granted as to Woodard's claim of discriminatory termination because Woodard has failed to

-24-

establish a prima facie case under <u>McDonnell Douglas</u>.  It is undisputed that Woodard is a member of a protected class, was qualified for her position, and suffered an adverse employment action.  However, Woodard has not pointed to circumstances surrounding her termination that give rise to an inference of discrimination.

Woodard argues that she was fired for refusing a transfer from the Chestnut Hill store to another Blockbuster location.[11]  Pls.' Mem. 19.  She further argues that her termination was discriminatory because the stores to which DL Howell sought to transfer her were "African-American" stores and Woodard's transfer was sought solely because of her race.

Woodard provides no evidence to support her claim that the stores to which Howell sought to transfer her were classified by Blockbuster as African-American stores.  She refers to a single document, the "African-American memorandum," that addressed the use of marketing materials in stores where Blockbuster had determined that demand was high for movies starring African-Americans.  Woodard has provided no evidence

---

[11]     Plaintiffs' memorandum spends little time explaining Woodard's theory of the case.  Instead, most of the memorandum is spent discussing facts related to the plaintiffs in <u>Coleman v. Blockbuster</u>, which are not relevant in this case.  The memorandum also attacks Blockbuster's legitimate reason for firing Woodard.  However, this discussion of pretext is irrelevant.  Because plaintiff fails to establish a prima facie case, the first step of <u>McDonnell Douglas</u>, the Court does not reach the third step, examining Blockbuster's non-discriminatory reason.

that Blockbuster's marketing program was at all related to staffing decisions, particularly to Howell's request to transfer Woodard.   Thus, even assuming that Woodard was terminated because she refused a transfer, there is no evidence of a link between Woodard's termination and her race.

Woodard has failed to show that she was terminated under circumstances giving rise to an inference of discrimination.   Therefore, she has failed to establish a prima facie case of discriminatory termination and Blockbuster's motion for summary judgment as to Woodard's claim under § 1981 will be granted.


III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment will be granted.   An appropriate order follows.

-26-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAKISHA WILSON et al.,          :      CIVIL ACTION
                                :      NO. 06-1566
          Plaintiffs,           :
                                :
          v.                    :
                                :
BLOCKBUSTER, INC.,              :
                                :
          Defendant.            :
                                :

O R D E R

**AND NOW**, this **12th day of August 2008**, for the reasons
stated in the attached memorandum, it is hereby **ORDERED** that
Plaintiffs' claims under Title VII are **DISMISSED**.

It is further **ORDERED** that Blockbuster's motion for
summary judgment (doc. no. 35) is **GRANTED** as to all remaining
claims.

**AND IT IS SO ORDERED.**

 **S/Eduardo C. Robreno** 
**EDUARDO C. ROBRENO, J.**